# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 14-1281

**LOUIS J. ARTON, SR., ET UX.**

**VERSUS**

**DR. VICTOR TEDESCO, ET AL.**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2008-5095
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and David Kent Savoie, Judges.

**REVERSED AND REMANDED.**

**Alan K. Breaud**
**Breaud & Meyers, APLC**
**600 Jefferson St., Suite 1101**
**Lafayette, LA 70501**
**(337) 266-2200**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Louisiana Medical Mutual Ins. Co.**
    **Dr. Victor Tedesco, IV**

**John Paul Charbonnet**
**The Glenn Armentor Law Corporation**
**300 Stewart St.**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
  **Louis J. Arton, Sr.**
  **Barbara J. Arton**

**Brandon M. Rhodes**
**Gachassin Law Firm, LLC**
**P. O. Box 80369**
**Lafayette, LA 70598**
**(337) 235-4576**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **Lafayette General Medical Center**

**GREMILLION, Judge.**

Louis J. Arton, Sr., and his wife, Barbara K. Arton, appeal a partial final judgment in favor of Dr. Victor Tedesco and Lafayette General Medical Center (the hospital), which maintained Dr. Tedesco's and the hospital's exceptions of prematurity and prescription. For the reasons that follow, we reverse and remand the matter.

## FACTS

Mr. Arton, a patient of Dr. Tedesco, was to undergo a "mini maze" procedure to treat a heart condition, on February 7, 2006. Before the surgery, it was necessary to counteract the effects of Coumadin or Warfarin, a blood thinner. He alleges that he had advised Dr. Tedesco and personnel at the hospital that he had previously been administered fresh frozen plasma (FFP) with near-fatal results. Nonetheless, according to the Artons' petition, Mr. Arton was administered FFP, resulting in significant and permanent health problems.

On January 27, 2007, the Artons filed a request with the Commissioner of Administration that a medical review panel be convened to review the care Mr. Arton had received. This request was very non-specific, alleging only that his claim was "[d]ue to medical malpractice and negligence."

On February 2, 2007, the Artons amended their complaint to assert:

> I do not know the medical terminology but the reason I am filing this complaint for injury and malpractice against the above individuals because I feel there is negligence for the following reasons. On February 6, 2006, I went to Lafayette General Hospital to do my pre-admit and to take a chest x-ray and blood work. When I was asked about my allergic reactions I told the admit nurse that I was allergic to penicillin, cephalexin, Keflex, and when I had surgery two years before, the blood plasma did not work for me to reverse warfarin I was on. I had to get my vitamin K shot.
>
> . . . .

The last thing I remember is my lungs filing [sic] up with fluid. I was going into respiratory arrest. . . . I later learned that I was given four bags of fresh frozen plasma. . . . I also learned that the average time of administering fresh frozen plasma should be 30 to 40 minutes per bag and only if the patient is bleeding. I was not.

Whey they were rushing the plasma in me at this time when [sic] I had been in the holding room since 8:30 AM on that morning. I told the hospital the previous day that the fresh frozen plasma had not work [sic] on me when I had kidney surgery about two years before. Dr. Tedesco and the hospital were negligent and should have sought other alternatives. The admitting staff were told and my medical records show the partys [sic] involved were not to use penicillin, Keflex, cephalexin, and blood products on me.

A medical review panel was convened and, in due course, rendered an opinion finding that neither Dr. Tedesco nor the hospital breached the appropriate standards of care. The Artons then filed a petition for damages. The pertinent factual allegations in that petition state:

3.

On February 7, 2006, Mr. Arton was admitted to the hospital under the care of Dr. Tedesco. There, he was given improper treatment in connection with the proposed surgery including the administration of medications he had previously advised the Defendants of regarding allergies and the overly rapid administration of fresh frozen plasma in connection with elective surgery, among other improper procedures, which resulted in near fatal injuries, extensive hospitalization and treatment, and left him with residual problems.

In June 2014, the Artons filed a court-ordered pretrial statement, which Dr. Tedesco and the hospital contend, attempted to assert a new claim for lack of informed consent. They filed the exceptions from which the Artons appeal.

**DISCUSSION AND ANALYSIS**

Medical malpractice claims based upon lack of informed consent are governed by La.R.S. 40:1299.40, et seq, the "Uniform Consent Law."[1] In a suit

---

[1] After the alleged malpractice in this matter, the Uniform Consent Law, then La.R.S. 40:1299.40, was amended by 2012 La. Acts No. 759, and redesignated La.R.S. 40:1299.39.5.

against a health care provider based upon lack of informed consent, the only theory on which recovery may be had is negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent. La.R.S. 40:1299.40(D)(2)(a). Consent can be given in written form (section (A)) or verbally (section (C)). When consent is written, no evidence may be admitted to modify or limit the patient's written authorization. La.R.S. 40:1299.40(B).

All claims for medical malpractice in Louisiana must be initiated by the invocation of a medical review panel. La.R.S. 40:1299.47(A)(1)(a). That request must contain, at a minimum, a number of items of information, including "[a] brief description of the alleged malpractice as to each named health care provider." La.R.S. 40:1299.47(A)(1)(b)(vi).

The exception of prescription is governed by La.Code Civ.P. art. 927. The standard of review of a grant of an exception of prescription is determined by whether evidence was adduced at the hearing of the exception. If evidence was adduced, the standard of review is manifest error; if no evidence was adduced, the judgment is reviewed simply to determine whether the trial court's decision was legally correct. *Allain v. Tripple B Holdings, LLC*, 13-673 (La.App. 3 Cir. 12/11/13), 128 So.3d 1278. The party pleading the exception of prescription bears the burden of proof unless it is apparent on the face of the pleadings that the claim is prescribed, in which case the plaintiff must prove that it is not. *Id*.

There was evidence introduced by all parties. Therefore, the standard of review is manifest error. We find that the Artons' complaint to the Division of

_____

The amendment effected no substantive changes to any of the provisions upon which our opinion is based. All references herein are to the pre-amendment version of the statute..

Administration and their petition, while not invoking talismanic language of "informed consent," did allege facts sufficient to place the defendants on notice that the issue of Mr. Arton's consent to FFP was a key, if not the central, issue in the case. He stated twice in his letter to the Division of Administration that he advised hospital personnel that he was not to be administered FFP or other blood products. In their petition, the Artons alleged that "[Mr. Arton] had previously advised the Defendants of [sic] regarding allergies and the overly rapid administration of fresh frozen plasma in connection with elective surgery. . . ." These pleadings place Mr. Arton's consent to being administered FFP squarely at issue in the case. And because the issue was raised within the one-year prescriptive period, and alleged within the ninety-day delay period following rendition of the medical review panel's decision, pursuant to La.R.S. 40:1299.47(A)(2)(a), the claim is not prescribed. The trial court did manifestly err in maintaining the exceptions of prescription.

The exception of prematurity is dilatory in nature and tests whether the case "has matured to the point where it is ripe for judicial determination." *Moreno v. Entergy Corp.*, 10-2268, p. 3 (La. 2/18/11), 64 So.3d 761, 763. The Defendants point out that one prerequisite to every medical malpractice action is its submission to a medical review panel. Because the issue of informed consent was never submitted to the panel, Defendants argue, the claim based upon informed consent is premature. There exists a profound, fundamental problem with the exceptions in this case: they were not filed in response to any pleading, but to a memorandum before trial. An exception of prematurity is waived if not filed with or before a party's answer. La.Code Civ.P. art. 926(B).

4

**CONCLUSION**

The issue herein is not the merits of the Artons' claim for lack of informed consent. The issue is whether the law affords them the opportunity to ever present its merits to a court. The language employed by the Artons in their complaint to the Division of Administration and in their petition was clearly sufficient to place a reasonable defendant on notice that consent to receiving FFP was a central issue in the case. The exceptions of prematurity filed by the Defendants were untimely, as they were barred pursuant to the terms of La.Code Civ.P. art. 926(B). The trial court manifestly erred in maintaining the Defendants' exception of prescription, as all claims were timely filed. The judgment of the trial court is reversed and the matter is remanded for further proceedings in accordance with this opinion. All costs are assessed to Defendants/Appellants, Dr. Victor Tedesco and Lafayette General Medical Center.

**REVERSED AND REMANDED.**