NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-965

JEFFREY L. BUELOW

VERSUS

DONALD MELVIN ROBERTS

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 239,185
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Marc T. Amy, Phyllis M. Keaty, and John E. Conery, Judges.

Amy, J., concurs in the result.

AFFIRMED.

**William M. Ford**
**Attorney at Law**
**Post Office Box 12424**
**Alexandria, Louisiana  71315-2424**
**(318) 442-8899**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Donald Melvin Roberts**

**Jeffrey L. Buelow**
**1710 Powell Lane**
**Alexandria, Louisiana  71303**
**(318) 730-3302**
**Pro se:**
      **Jeffrey L. Buelow**

**CONERY, Judge.**

Pro se plaintiff, Jeffrey Buelow, filed a petition against his stepfather, Donald Melvin Roberts, seeking damages for the alleged wrongful death of his mother, Linda Diann Aymond Roberts. The trial court granted Mr. Roberts' peremptory exception of prescription, dismissing Mr. Buelow's petition with prejudice and assessed all court costs against Mr. Buelow. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

Mrs. Roberts, Mr. Buelow's biological mother, died on July 28, 2009, after having been diagnosed with what is described in Mr. Buelow's petition as "Bronchiolitis obliterans organizing pneumonia (BOOP)." Mr. Buelow claims that during the period that Mrs. Roberts was hospitalized in the Rapides Medical Center, Mr. Roberts was under the "influence of alcohol."

Mr. Buelow claimed that Mr. Roberts was intoxicated when he signed "Consent to Withdraw Life-Sustaining Procedures," for Mrs. Roberts. Mrs. Roberts passed away shortly after life support was withdrawn. Mr. Buelow alleges that Mrs. Roberts' life-sustaining procedures were wrongfully withdrawn by Mr. Roberts, as BOOP was a curable disease.

According to Mr. Buelow, his former attorney filed his wrongful death petition. The date of filing is now at issue. Mr. Roberts suggests in his brief to this court "that the Clerk's stamp shows the filing as "10 JUL 33 A8:40" and the Clerk has written "Aug 2" above this stamp".

On December 3, 2014, in response to Mr. Buelow's wrongful death petition, Mr. Roberts filed a Peremptory Exception of Prescription and Memorandum of Authority. The peremptory exception provided that Mrs. Roberts died on July 28,

2009, and not July 28, 2010, as stated in Mr. Buelow's petition. Mr. Roberts attached as Exhibit A Mrs. Roberts' Certificate of Death, which stated that her date of death was July 28, 2009. In his testimony at the hearing, Mr. Buelow confirmed that Mrs. Roberts' date of death was July 28, 2009.

The hearing on Mr. Roberts' exception of prescription was initially fixed for January 5, 2015, but continued until June 1, 2015. In the interim, on January 30, 2015, Mr. Buelow filed a document entitled "Formal Removal of Attorney of Record." The document sought to dismiss Mr. Buelow's attorney. From this point forward in the litigation, Mr. Buelow proceeded to represent himself in a *pro se* capacity.

The hearing on Mr. Roberts' exception of prescription was held on June 1, 2015. Mr. Roberts argued that Mr. Buelow's wrongful death petition was prescribed on its face pursuant to La.Civ.Code art. 3492. Louisiana Civil Code Article 3492 provides in pertinent part, "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."

The trial court, at the request of counsel for Mr. Roberts, received evidence that July 28, 2009, was the date of Mrs. Roberts' death as shown in the certified copy of her Certificate of Death and admitted by Mr. Buelow. The trial court also took judicial notice of Mr. Buelow's Petition for Damages for Wrongful Death, in which the filing date of August 2, 2010, as believed to have been corrected by the clerk of court, is five days beyond the one-year anniversary of Mrs. Roberts' death. Finally, the trial court took judicial notice of a calendar for the year 2010, which demonstrated that the clerk of court's office was open on July 28, 2010, the one

year anniversary of Mrs. Roberts' death, and, thus, the prescriptive period was not extended due to a weekend or holiday.

At the time of the hearing on June 1, 2015, La. Dist. Court Rules, Rule 9.9(b) required that any memorandum in opposition and supporting documentation be served on opposing counsel eight days prior to the hearing of the exception, in default of which the party, or their counsel could lose the right to orally argue the case.[1] *Blackwell v. Waste Mgmt. of Louisiana*, 14-560 (La.App. 3 Cir. 11/5/14), 150 So.3d 664, 669. In deference to Mr. Buelow's *pro se* status, the trial court allowed him to testify at the hearing despite the fact that no memorandum in opposition to the exception of prescription and/or any supporting documentation had been filed into the record, or furnished to the trial court and opposing counsel.

During Mr. Buelow's testimony, he claimed he had filed a memorandum in opposition to the exception of prescription, though such a memorandum is not in the record. He also sought to submit into evidence two letters in opposition to the exception, over objection of opposing counsel. He claimed these letters allegedly represented his receipt of his mother's medical records. The objection to the admission of the letters was sustained and the letters were excluded by the trial court after opposing counsel's objection that the letters were "irrelevant and immaterial," as prescription began to run from Mrs. Roberts' date of death, not the date Mr. Buelow allegedly received his mother's medical records. The trial court also observed that Mr. Buelow was required to timely file an opposition to the exception of prescription together with any supporting documentation. *See* La. Dist. C. R. 9.9(c).

---

[1] Louisiana District Court Rules, Rule 9.9(c), was amended on October 7, 2015, effective January 1, 2016, and also requires any opposition to be furnished to the trial judge and served on all other parties so it is received at least eight days before the scheduled hearing.

Mr. Buelow further alleged at the hearing that his wrongful death petition had been timely fax filed by his former attorney on or before July 28, 2010. However, once again, no such faxed document appears in the record on appeal. The only wrongful death petition is the original petition filed on August 2, 2010, according to the clerk's corrected notation thereon.

At the conclusion of the hearing, the trial court granted Mr. Roberts' peremptory exception of prescription. The trial court found that Mr. Buelow's wrongful death petition was not timely filed and signed a judgment dismissing the petition with prejudice and at his cost. Mr. Buelow timely filed his notice of appeal of the trial court's June 1, 2015 judgment.

## ASSIGNMENT OF ERROR

Mr. Buelow claims that the trial court erred in dismissing his claim based on the record before the court. He further argues that the trial court erred in taking judicial notice of the change in the date of filing of his petition for wrongful death by the clerk of court.

## LAW AND DISCUSSION

### *Standard of Review*

In the recent case of *Arton v. Tedesco*, 14-1281, p. 3 (La.App. 3 Cir. 4/29/15), 176 So.3d 1125, 1128, *writ denied*, 15-1065 (La. 9/11/15), 176 So.3d 1043, a panel of this court succinctly stated the standard of review to be applied by an appellate court when reviewing a trial court's judgment granting a La.Code Civ.P. art. 927 (1) peremptory exception of prescription:

> The standard of review of a grant of an exception of prescription is determined by whether evidence was adduced at the hearing of the exception. If evidence was adduced, the standard of review is

manifest error; if no evidence was adduced, the judgment is reviewed simply to determine whether the trial court's decision was legally correct. *Allain v. Tripple B Holding, LLC,* 13–673 (La.App. 3 Cir. 12/11/13), 128 So.3d 1278. The party pleading the exception of prescription bears the burden of proof unless it is apparent on the face of the pleadings that the claim is prescribed, in which case the plaintiff must prove that it is not. *Id.*

Evidence was submitted into the record by the defendant Mr. Roberts in support of his exception of prescription. Despite his lack of opposition in the record to the exception, the trial court allowed Mr. Buelow to testify in deference to his *pro se* status. Although the record contains no documentation in opposition to the exception, Mr. Buelow attached to his brief on appeal a number of documents, including a memorandum in opposition to the exception of prescription. However, as previously stated, none of these documents appear in the record before us and therefore cannot be considered by this court on appeal. Uniform Rules—Courts of Appeal, Rule 1-3. We will now proceed to review the judgment of the trial court under the manifest error standard. *See Arton*, 176 So.3d 1125.

***Manifest Error***

The Louisiana Supreme Court in the recent case of *Hayes Fund for The Frist United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592, p. 4 (La.12/08/15), ___So.3d ___, ___, reiterated the standard to be used by the appellate courts in a manifest error review and stated in pertinent part:

> In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Cenac v. Public Access Water Rights Ass' n*, 02-2660, p. 9 (La.6/27/03), 851 So.2d 1006, 1023. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La.4/14/04), 874 So.2d 90, 98. Rather in reversing a trial court's factual conclusions with regard to causation, the appellate court must satisfy a

two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993).

This test requires a reviewing court to do more than simply review the record for some evidence, which supports or controverts the trial court's findings. The court must review the entire record to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Parish Nat. Bank v. Ott*, 02-1562, pp. 7-8 (La.2/25/03), 841 So.2d 749, 753-54. The issue to be resolved on review is not whether the judge or jury was right or wrong, but whether the judge's or jury's factfinding conclusion was a reasonable one. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989); *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973).

### The Prescriptive Period for a Claim of Wrongful Death

A wrongful death action is governed by La.Civ.Code art. 3492, which allows a one-year prescriptive period applicable to delictual actions. *Taylor v. Giddens*, 618 So.2d 834 (La.1993). The prescriptive period for a wrongful death action commences on the victim's date of death. *Id.*

Louisiana Civil Code Article 3456 specifically governs the calculation of the one-year prescriptive period contained in La.Civ.Code art. 3492, and provides, "If a prescriptive period consists of one or more years, prescription accrues upon the expiration of the day of the last year that corresponds with the date of the commencement of prescription." In this case, July 28, 2009 was the date of death of Mrs. Roberts, as demonstrated by the Certificate of Death filed into evidence at the hearing. As previously stated, Mr. Buelow does not dispute that his mother, Mrs. Roberts, died on July 28, 2009.

A panel of this court in *Delahoussaye v. Thibodeaux*, 498 So.2d 1137, (La.App. 3 Cir.), *writ denied*, 501 So.2d 236 (La.1987), clarified that in a delictual

6

action pursuant to La.Civ.Code art. 3492, prescription begins to run from the day injury or damage is sustained. When La.Civ.Code art. 3492 is applicable, then La.Civ.Code art. 3456 applies and "further provides that if a prescriptive period consists of one or more years, prescription accrues upon the expiration of the day of the last year that corresponds with the date of the commencement of prescription." *Delahoussaye*, 498 So.2d at 1138.

The *Delahoussaye* panel rejected the plaintiff's reliance on La.Code Civ.P. art. 5059, which is "a general statement on the computation of prescriptive periods."[2] *Delahoussaye*, 498 So.2d 1137. Rather, the panel noted that, "[a] statute which specifically covers a particular subject takes precedence over a general law. *Esteve v. Allstate Ins. Co.*, 351 So.2d 117 (La.1977.)" *Id.* at 1138. As in *Esteve* and *Delahoussaye*, La.Civ.Code art. 3456 applies to the one-year prescriptive period applicable to this case, rather than La.Code Civ.P. art. 5059. Therefore, July 28, 2010 marked the end of the prescriptive period for filing Mr. Buelow's petition.

At this juncture, we note that the trial court found that the prescriptive date was July 29, 2010, not July 28, 2010, as she appeared to apply La.Code Civ.P. art. 5059 instead of La.Civ.Code art. 3456, as reflected in the court's discussion with Mr. Buelow at the hearing. However this error of law is harmless, as a review of the record, and the calendar for 2010, clearly reflects that July 28, 2010, was a

---

[2] Louisiana Code of Civil Procedure Article 5059 provides in pertinent part:

> In computing a period of time allowed or prescribed by law or by order of court, the date of the act, event, or default after which the period begins to run is not to be included. The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday.

Wednesday, also not a weekend or a holiday, and that the clerk's office was open for Mr. Buelow's petition to be filed on July 28, 2010, and it was not.

At Mr. Roberts' counsel's request, the trial court also took judicial notice of the Petition filed in the proceedings indicating the date of filing was August 2, 2010, as well as a calendar for the year 2010 which indicated that the Petition was not filed within a one-year period.

Louisiana Code of Evidence Article 201 governs the trial court's ability to take judicial notice and states in pertinent part:

> **A. Scope of Article.** This Article governs only judicial notice of adjudicative facts. An "adjudicative fact" is a fact normally determined by the trier of fact.
>
> **B. Kinds of facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either:
>
> (1) Generally known within the territorial jurisdiction of the trial court; or
>
> (2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
>
> **C. When discretionary.** A court may take judicial notice, whether requested or not.
>
> **D. When mandatory.** A court shall take judicial notice upon request if supplied with the information necessary for the court to determine that there is no reasonable dispute as to the fact.

The calendar for which the trial court took judicial notice fit within the definition of a "judicially noticed fact," as it is "not subject to reasonable dispute." La.Code Evid. art. 201(B). The calendar for the year 2010 is "Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." La.Code Evid. art. 201(B)(2). Therefore, we find that the trial court

was well within its discretion to take judicial notice of the calendar for the year 2010 described above.

In *Pineger v. Harris*, 06-2489, p. 3, (La.App. 1 Cir. 5/4/07), 961 So.2d 1246, 1249 (emphasis ours), the court discussed the application of La.Code Evid. art. 202, which "provides for mandatory judicial notice of federal and state laws and certain ordinances. [Louisiana Code of Evidence] Article 202 also provides for notice of various legal matters, when requested by a party and with proper documentation. **Although a court may take judicial notice of its own proceedings**, [La.Code Evid. art.] 202 does not allow courts to take judicial notice of other courts' proceedings." *See also United General Title Ins. Co. v. Casey Title, Ltd.*, 01-600 (La.App. 5 Cir. 10/30/01), 800 So.2d 1061, 1065. Clearly, the petition in this case was part of the court's own proceedings.

In his second assignment of error, Mr. Buelow questions the ability of the trial court to take judicial notice of the writing on the face of his petition showing the date of filing of August 2, 2010. As previously indicated, the original clerk's stamp contained the notation, "10 JUL 33 A8:40." The trial court took judicial notice that there was no such date as "10 July 33" and took judicial notice that the calendar showed July 28, 2010 was a Wednesday.

The trial court took judicial notice that the date written on the petition, August 2, 2010, was a Monday and found that the clerk's date stamp had obviously not been re-calibrated as of 8:40 AM on August 2, 2010, hence the notation "10 JUL 33 A8:40." Therefore, we find that the trial court was also within its discretion to take judicial notice of the petition filed by Mr. Buelow, with the corrected date of August 2, 2010, as contained in the record of the proceedings before the trial court.

At the hearing, the trial court attempted to explain the situation surrounding the date stamp used by the clerk of court when a pleading is filed. In this explanation, the trial court concluded that the clerk's office failed to properly change the date stamp after the weekend in 2010 over which the month changed from July to August, making August 2, 2010 the correct date of the first Monday in August:

BY MR. BUELOW:

-- on this petition here, that it has a stamped date of July but has a cross through, and it says "August".

BY THE COURT:

It says – mine is stamped as well. It's stamped -- what happened is, they have a stamper.

BY MR. BUELOW:

Uh-huh.

BY THE COURT:

And it's stamped July 23rd [sic]. Of course we all know there's no July 23rd [sic]. So July 21st [sic], then the next date would be, if we had that number, that it would be July 22nd [sic] --

BY MR. BUELOW:

Yeah.

BY THE COURT:

--I mean 32nd, which would really, would be August 1st. And then the --

….

BY THE COURT:

--33rd is August 2nd.

Though the trial court initially misstated that the clerk's stamp indicated a filing on July 23, the trial court immediately corrected itself. The clerk's filing

10

stamp in the petition in the record initially read "10 JUL 33 A8:40." The trial court concluded that someone from the clerk's office had obviously failed to change the month on the stamp, as the court could take judicial notice that July has thirty-one days. August 2 would have been Monday in the year 2010, as shown on the calendar, and the trial court took judicial notice that the petition contained the filing date "Aug. 2," 2010. The trial court then concluded that the petition was actually filed on Monday, August 2, 2010, five days late.

Mr. Buelow questioned the trial court's finding of whether the date stamp actually read what it was intended to read, August 2, 2010. The question arises as to whether the trial court's interpretation of the date, and its finding that the actual date of filing was, in fact, August 2, was a finding that could be based on judicial notice.

As previously stated, La.Code Evid. art. 202, and the jurisprudence interpreting same, allow a trial court to take judicial notice of the record in its own proceedings. Mr. Buelow offered no documents or testimony in opposition to the "Aug. 2" date written on the petition. The record reflects that Mr. Buelow did not produce any letter from his former counsel, or a check for the filing fee with the necessary July 28, 2010 date for timely filing of his petition. Mr. Buelow did not present any evidence regarding his attorney's filing of the petition. Therefore, we find that the trial court was allowed to take judicial notice of the petition as it appeared in the record of its proceedings. Thus, the record before the trial court clearly showed that the date of filing was August 2, 2010.

The trial court's exchange with Mr. Buelow also addressed his contention that the petition was fax filed before July 28, 2010 by his former attorney.
BY THE COURT:

11

> --sir, it wasn't done by fax. The Clerk of Court -- if he had fax-filed it --

BY MR. BUELOW:

> Uh-huh.

BY THE COURT:

> --it would be in the suit record. And there's no proof that anything was fax-filed. It -- the only filing that's in the suit record is August 2nd. I don't have where he fax-filed anything.

MR. BUELOW:

> All right.

Mr. Buelow further protested that if his petition was not timely filed, it was the fault of his former attorney. In response, the trial court patiently explained, "That, if your attorney -- whether your attorney did what he was supposed to do in a timely fashion, that's a totally different issue. The issue before the Court today is whether the lawsuit was timely filed. I am telling you it was not, and I'm, granting this exception."

## CONCLUSION

Based on the foregoing, and after a complete and thorough review of the record before this court, we affirm the trial court's judgment of June 1, 2015, dismissing with prejudice Jeffrey L. Buelow's petition against Donald M. Roberts on the basis of prescription pursuant to La.Code Civ.P. art. 927. All costs of this appeal are assessed to Jeffrey L. Buelow.

**AFFIRMED.**

This opinion is **NOT DESIGNATED FOR PUBLICATION.** Uniform Rules - Courts of Appeal, Rule 2-16.3