# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-423


**JORDAN BRYANT**

**VERSUS**

**STATE OF LOUISIANA, DEPARTMENT OF HEALTH AND HOSPITALS, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 259,927
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHANNON J. GREMILLION
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and John E. Conery, Judges.


**REVERSED.**

**Deirdre Renee Fuller**
**Fuller Law Firm, L.L.C.**
**602 Murray Street**
**Alexandria, LA 71301**
**(318) 448-3456**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Jordan Bryant**

**Jeff Landry**
**Attorney General**
**Lewis O. Lauve, Jr.**
**Special Assistant Attorney General**
**3112 Jackson Street**
**Alexandria, LA 71301**
**(318) 449-1937**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Andrea Ford**

**Jeff Landry**
**Attorney General**
**Barbara Bell Melton**
**Special Assistant Attorney General**
**Nate W. Friedman**
**Special Assistant Attorney General**
**Faircloth Melton & Sobel, LLC**
**105 Yorktown Drive**
**Alexandria, LA 71301**
**(318) 619-7755**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Thaddeus Green**

**Jeff Landry**
**Attorney General**
**Leisa B. Lawson**
**Assistant Attorney General**
**900 Murray St., Suite B-100B**
**Alexandria, LA 71301**
**(318) 487-5944**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Department of Children and FamilyServices**

**Jeff Landry**
**Attorney General**
**Steven M. Oxenhandler**
**Special Assistant Attorney General**
**Michael J. O'Shee**
**Special Assistant Attorney General**
**Gold, Weems, Bruser, Sues & Rundell**
**P. O. Box 6118**

**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**State of Louisiana, Department of Health and Hospitals**
**Office for Citizens with Developmental Disabilities**
**Pinecrest Supports & Services Center**

**GREMILLION, Judge.**

Plaintiff/Appellant, Mr. Jordan Bryant, appeals the dismissal of his personal injury claim against the Defendants/Appellees, Andrea Ford, Thaddeus Green, and the State of Louisiana through the Department of Health and Hospitals (DHH), the Office for Citizens with Developmental Disabilities (OCDD), Pinecrest Supports & Services Center (Pinecrest), and the Department of Children and Family Services (DCFS) on exceptions of prematurity and prescription.

The facts alleged in Mr. Bryant's original petition assert a very tragic incident in which Ford and Green, employed at the time by Pinecrest, took Mr. Bryant, a resident of Pinecrest, into his room and used excessive force to subdue him. As a result, Mr. Bryant's neck was broken, and he was rendered a quadriplegic. In his petition, he alleged a number of negligent and intentional acts and omissions on the defendants' part, including allegations that sound as though at least part of his demand is based upon medical malpractice. Prior to filing his suit, though, Mr. Bryant did not request that his matter be submitted to a medical review panel (a panel) pursuant to the Medical Liability for State Services Part of the Louisiana Medical Malpractice Act (the Act), La.R.S. 40:1237.1 et seq., which, with certain exceptions, requires that medical malpractice claims against the State first be submitted to a panel.

The defendants filed exceptions of prematurity and prescription in which they asserted that Mr. Bryant's claim was premature because he did not convene a panel and had prescribed because more than a year elapsed since his injury and he had not initiated his claim properly. Mr. Bryant amended his petition several times in an attempt to address the exceptions. At the hearing on the exceptions, no evidence was introduced. No documentary evidence was attached to any of the defendants' exceptions. The trial court granted the exceptions as to all defendants. This appeal

followed. Mr. Bryant asserts that the trial court erred in granting Appellees' exceptions of prematurity and prescription because they failed to carry the requisite burden of proof. He further asserts that the trial court erred in applying the Louisiana Medical Malpractice Act to the allegations asserted in his petition. For the reasons that follow, we reverse.

## ANALYSIS

The Act erects a framework within which all medical malpractice claims against state health care providers must be pursued. "'Malpractice' means the failure to exercise the reasonable standard of care specified and required by Subsection B of this Section, in the provision of health care, when such failure proximately causes injury to a patient, as provided in Subsection B of this Section." La.R.S. 40:1237.1(A)(4). The definition of "State health care provider" is lengthy; however, it essentially encompasses all state departments and agencies that provide health care services, including their employees acting in the course and scope of their employment. La.R.S. 40:1237.1(A)(9).

"No action against the state, its agencies, or a person covered by this Part, or his insurer, may be commenced in any court before the claimant's complaint has been presented to a state medical review panel established pursuant to this Section." La.R.S. 40:1237.2(B)(1)(a)(i).

The defendants who interpose exceptions of prematurity bear the burden of proof, including entitlement to review of the plaintiff's action by a panel. *Broussard v. Lafayette Physical Rehabilitation Hosp., LLC*, 15-1185 (La.App. 3 Cir. 5/4/16), 191 So.3d 1202. Because the defendants justify the trial court's maintenance of their exceptions on the basis of the allegations contained in Mr. Bryant's petition and amended petitions, we will examine those in detail. Defendants argue that, as a matter of law, Mr. Bryant's petition(s) allege medical malpractice claims.

2

After receiving the exceptions, as mentioned above, Mr. Bryant sought to address the exceptions by filing first, second, and third supplemental and amending petitions. There exists a problem with these amended pleadings, though; for, while Mr. Bryant prayed for leave of court to file these pleadings, no order allowed them. No written consent of any party to these amendments appears in the record. *See* La.Code Civ.P. art. 1151. We are without authority to consider them.

Mr. Bryant's original petition alleges in part:

6.

> On or about September 30, 2016, Andrea Ford and Thaddeus Green, who were employed as staff at Pinecrest, took Jordan into his room and used unreasonable physical force on him to subdue him, which caused him significant bodily injury and rendered him unconscious.

The petition goes on to allege that the defendants were negligent in several particulars, including "Failing to adhere to the accepted standards of medical and mental health practices required under the circumstances[,]" and "Intentionally and/or negligently using excessive, unreasonable and unwarranted force to control the behavior of Jordan Bryant[.]" The petition also alleges that Mr. Bryant was treated for his injuries at Rapides Regional Medical Center. After release from Rapides Regional, Mr. Bryant was sent to Meadowview Nursing Home in Minden, Louisiana, where, he alleges, he was subjected to abuse and neglect. Bedsores he developed at Meadowview resulted in Mr. Bryant having to undergo surgery at Willis Knighten Medical Center in Shreveport, followed by return to Meadowview.

The question before us, then, is whether the petition on its face alleges a medical malpractice claim. We note that, because no evidence was adduced at the hearing on the defendants' exceptions, our review owes no deference to the trial court's determination. *Arton v. Tedesco*, 14-1281 (La.App. 3 Cir. 4/29/15), 176 So.3d 1125, *writ denied*, 15-1065 (La. 9/11/15), 176 So.3d 1043.

3

*Coleman v. Deno*, 01-1517, pp. 17-18 (La. 1/25/02), 813 So.2d 303, 315 (citations omitted), listed the six factors courts should consider in determining whether conduct is "malpractice":

> "[1] whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill,
>
> [2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and
>
> [3] whether the pertinent act or omission involved assessment of the patient's condition."

. . . .

[4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,

[5] whether the injury would have occurred if the patient had not sought treatment, and

[6] whether the tort alleged was intentional.

From the information available to us, which is limited to the allegations of the petition, we cannot say whether this incident was "treatment related," but it is alleged that it was "caused by a dereliction of professional skill," per *Coleman*, as among the allegations of the petition are those that allege that Pinecrest failed to adequately train Ford and Green. Without more information about what specifically occurred between Ford, Green, and Mr. Bryant, we have no means of determining whether expert testimony will be required to prove that their conduct was substandard. The allegations do not involve an instance in which Ford and Green were assessing Mr. Bryant's condition. The incident did not occur in the context of the doctor-patient relationship, but the allegations do establish it in the context of those services for which Pinecrest was established.

4

Pinecrest is not a hospital. It is a "developmental center" as defined in La.R.S. 28:451.2(9), which provides:

> "Developmental center" means an administrative unit of the office under its administration, supervision, and control through which the office provides and develops developmental disabilities services and system capacity building efforts. Developmental centers are responsible for:
>
> (a) Planning and providing living options and other developmental disabilities services as determined by the office.
>
> (b) Stimulating and supporting capacity building within the system through resource centers, technical assistance, training, and other means as determined by the office.

Pinecrest's duty, pursuant to La.R.S. 28:451.4, is to provide "developmental disability services," also defined in La.R.S. 28:451.2(10) as "programs, services, and supports for persons with developmental disabilities that include but are not limited to information and referral services, support coordination services, system entry services, development of the support profiles and plans, individual and family support services, living options, habilitation services, and vocational services." These services are delivered to people with developmental disabilities, also defined in La.R.S. 28:451.2, which represent disabilities that severely impact one's ability to care for himself, his ability to communicate, his learning capacity, or his mobility and that requires "a combination and sequence of special, interdisciplinary, or generic care, treatment, or other services which are of lifelong or extended duration and are individually planned and coordinated." Thus, medical care forms a component of the services Pinecrest provides.

It is far from clear that Mr. Bryant "sought treatment" at all. He was present at Pinecrest but alleges that he was taken by Green and Ford into his room to be subdued and allegedly beaten.

Proof of these *Coleman* factors is the burden imposed on the defendants. They submitted no evidence whatsoever and argue with vigor the first five factors as though they are dispositive of the issue. We disagree and find, in the context of the Act, the sixth *Coleman* factor, whether the petition alleges intentional tortious conduct, to be of greater significance.

Within the definition of "State health care provider" in La.R.S. 40:1237.1(9) is found subsection (a)(iv)(cc), which provides, "However, no person or entity referenced in this item shall be considered a 'state health care provider' or 'person covered by this Part' for any injury or death of the patient resulting from any act or omission of gross negligence or any willful or wanton act or omission." "The word 'willful' has been defined as proceeding from a conscious motion of the will; voluntary; knowingly; deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary. *Black's Law Dictionary* 1599 (6th ed. 1990)." *Grant v. Natchitoches Manor Nursing Home*, 96-1546, p. 4 (La.App. 3 Cir. 5/14/97), 696 So.2d 73, 76, *writ denied*, 97-1582 (La. 10/17/97), 701 So.2d 1330. We conclude that willful—and, by definition, intentional—acts are not covered by the Act.

Mr. Bryant alleges that Green and Ford employed "excessive, unreasonable and unwarranted force" in subduing him. This constitutes an intentional tort that is not covered by the Act. Because the petition was filed within one year and was not premature, the claim would not be prescribed regardless of the applicable statute, be it La.Civ.Code arts. 3492, 3493.10, or 3496.1, or La.R.S. 9:2800.9, of which the shortest prescriptive period is one year. The trial court erred in granting the exceptions of prematurity and prescription.

The judgment of the trial court dismissing the petition of Jordan Bryant is reversed and the matter remanded to the trial court for proceedings consistent with

6

this opinion. All costs of this proceeding, in the amount of $2,659.71, are taxed to defendants/appellees, the State of Louisiana, Department Department of Health and Hospitals, Office for Citizens with Developmental Disabilities, Pinecrest Supports & Services Center, Department of Children and Family Services, Andrea Ford, and Thaddeus Green.

**REVERSED.**