STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**19-307**


N. G., ET AL.

VERSUS

A. C., ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2018-4581
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and John D. Saunders, Judges.


**WRIT DENIED.**


**Cooks, J., concurs and assigns written reasons.**

**W. Alan Lilley**
**Attorney at Law**
**P. O. Drawer 3563**
**Lafayette, LA 70501**
**(337) 237-5777**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
**Shannon Guidry Gary**

**Sidney W. Degan, III**
**Degan, Blanchard & Nash**
**5555 Hilton Avenue, Suite 620**
**Baton Rouge, LA 70809**
**(225) 610-1110**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
**National Security Fire & Casualty Company**

**Anthony J. Fontana, Jr.**
**A Professional Law Corporation**
**210 N. Washington Street**
**Abbeville, LA 70510**
**(337) 898-8332**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
**N. G.**
**N. G., obo S. N. G.**

**Troy Allen Broussard**
**Allen & Gooch, A Law Corporation**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1372**
**COUNSEL FOR DEFENDANT/APPLICANT:**
**Teurlings Catholic High School**

**Thomas M. Long**
**Attorney at Law**
**412 Travis Street, Suite C**
**Lafayette, LA 70503**
**(337) 233-9600**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
**B. C.**

**J. Kevin Stockstill**
**Attorney at Law**
**300 Stewart Street**
**Lafayette, La 70501**
**(337) 262-0203**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
**A. C.**

**SAUNDERS, Judge.**

Relator, Teurlings Catholic High School (Teurlings), seeks writs from the denial of its peremptory exceptions of no cause of action and prescription by the Fifteenth Judicial District Court, Parish of Lafayette, the Honorable Kristian Earles, presiding.

## STATEMENT OF THE CASE

SNG[1] turned eighteen years old one month prior to the filing of this writ application. She is the daughter of Plaintiff, NG, and SG. NG and SG were never married, but they had joint custody of SNG. NG lived out of state, and SNG lived with her mother and her half-brother, AC, who is SG's child from another relationship. AC is two years older than SNG.

In November of 2015, when SNG was a freshman and AC was a junior at Teurlings, SNG confided in a classmate that AC was sexually molesting her and that the abuse had been ongoing since SNG was 9 and AC was 11. That classmate reported this allegation to a counselor, who spoke to SNG and related the allegations to SG, but not to NG. The counselor followed up with SNG the day after the disclosure and again on December 8, 2015. Teurlings characterizes this as "multiple" follow-ups, during which time they received no further complaints from SNG.

In December of 2017, SNG advised the resource officer at Teurlings that her mother had not gotten her counseling, that AC was still living in the home with her, and that she wanted to tell NG about the abuse. Teurlings alleges that there were no allegations of any abuse occurring after November of 2015. The petition states that the abuse continued until the allegations were relayed to the counselor at Teurlings in 2015, implying that the abuse stopped at that time. However, this does not mean

---

[1] The initials of the children and their parents are used herein pursuant to Uniform Rules – Courts of Appeal, Rule 5-1, 5-2.

that the petition lacks an allegation that the abuse was ongoing at the time that SNG made the disclosure to the school's counselor as argued by Teurlings.

A meeting set up by the guidance counselor took place on December 15, 2017, and NG was told of the alleged abuse.[2] A report was made by Teurlings to the Department of Children and Family Services (DCFS) at that time because Teurlings was informed that a DCFS reference number was required in order for Teurlings to schedule counseling for SNG. Teurlings alleges that DCFS informed Teurlings that the situation "did not meet the policy definition of abuse that the DCFS is responsible to investigate."

NG contends that SG did not notify him of the allegations, did not get counseling for SNG, and ultimately allowed AC to live in her home with SNG after briefly sending AC to live with his father. In August of 2018, NG filed suit against AC, AC's father (BC), SG, SG's homeowner's insurer (National Security Fire and Casualty Company), and Teurlings. The suit was brought by NG for his own alleged damages and on behalf of SNG, who was a minor at the time suit was filed, for her alleged damages.

Teurlings filed exceptions of no cause of action and prescription.[3] A hearing on the exceptions was held on March 25, 2019,[4] and the trial court denied both exceptions in open court.[5] Teurlings timely filed a notice of intent to seek

---

[2] NG notes that despite Teurlings' attempts to characterize him as an absentee father, he met with Teurlings the same day that he was contacted.

[3] The status of the litigation as to defendants other than Teurlings is unknown.

[4] The pertinent court minutes are not attached to the writ application as required by Uniform Rules—Courts of Appeal, Rule 4–5(C)(10). However, the transcript of the hearing is attached; and thus, all of the necessary information is provided.

[5] A judgment denying the exceptions was not signed until May 2, 2019, despite the expressed intent of the judge and the parties at the hearing that the ruling be reduced to writing. Any procedural defect concerning the lack of a signed judgment at the time the writ application was filed has now been cured.

2

supervisory writs, and the trial court set a return date of April 24, 2019. This writ application, along with three supplements, was timely filed. Plaintiffs filed an opposition to the writ application, and Teurlings filed a reply to that opposition.

There are no scheduled hearing or trial dates.

Denials of peremptory exceptions of no cause of action and prescription are interlocutory rulings. *See J.A. Davis Props., LLC v. Martin Operating Partnership, LP*, 17-449 (La.App. 3 Cir. 6/21/17), 224 So.3d 39, *and Bezou v. Bezou*, 15-1879 (La.App. 1 Cir. 9/16/16), 203 So.3d 488, *writ denied*, 16-1869 (La. 12/5/16), 210 So.3d 814. "Ordinarily, an application for supervisory writ is the appropriate vehicle for the review of an interlocutory judgment." *McGinn v. Crescent City Connection Bridge Authority*, 15-165, p. 4 (La.App. 4 Cir. 7/22/15), 174 So.3d 145, 148.

## ON THE MERITS

*No Cause of Action*

"The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition." *Fink v. Bryant*, 01-987, p. 3 (La. 11/29/01), 801 So.2d 346, 348. It "is designed to test the legal sufficiency of the petition by determining whether plaintiff is afforded a remedy in law based on the facts alleged in the pleading." *Id* at 348-49. "The exception is triable on the face of the papers, and . . . the court must presume that all well-pleaded facts in the petition are true" with "[a]ll reasonable inferences [] made in favor of the nonmoving party[.]" *City of New Orleans v. Bd. of Dir. of La. St. Museum,* 98–1170, p. 9 (La. 3/2/99), 739 So.2d 748, 755.

The burden of proof is on the exceptor. *Id*. The parties may not introduce any evidence in support of or to controvert the exception. La.Code Civ.P. art. 931. In his opposing argument, Plaintiffs' counsel stated: "I want to make sure that my brief and all the documents that I had attached to it, I'm filing into evidence today for the

court." However, the transcript does not reflect what documents, if any, were received into evidence, and there are no attachments referenced in Plaintiffs' opposition memorandum.

> "An exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief . . . or when the allegations show the existence of an affirmative defense that appears clearly on the face of the pleadings."

*City of New Orleans*, 739 So.2d at 756.

This court reviews the trial court's denial of an exception of no cause of action using the de novo standard of review because it raises an issue of law. *Cole v. Sabine Bancshares, Inc.*, 17-272, (La.App. 3 Cir. 12/6/17), 258 So.3d 641, *writ denied*, 18-19 (La. 2/23/18), 237 So.3d 1188.

In their petition, Plaintiffs allege that Teurlings failed to report the alleged sexual abuse to DCFS for over two years and failed to inform NG of the alleged abuse. Plaintiffs allege that these failures prevented NG from taking legal action to remove SNG from SG's home, prevented SNG from getting counseling, and increased SNG's mental anguish. There are no allegations that Teurlings was in any way involved in the alleged abuse, that Teurlings knew of the abuse and failed to stop it, or that the abuse occurred on Teurlings' campus or at a Teurlings-sponsored event.

Under the Louisiana Children's Code Article 603, a "mandatory reporter" has been defined to include a "'[t]eaching or child care provider' . . . including any public or private teacher, . . . [and] school staff member[.]" La.Ch.Code art. 603(17)(d). The report of abuse shall be made by "any mandatory reporter who has cause to believe that a child's physical or mental health or welfare is endangered as a result of abuse or neglect." La.Ch.Code art. 609(A)(1). Violation of the duty to report "subjects the offender to criminal prosecution." La.Ch.Code art. 609(A)(2).

4

Teurlings alleges that to the extent that it had a duty to report the alleged abuse to SNG's parents, this duty was fulfilled upon its notification to SG, since she was the domiciliary parent. Teurlings further argues that any alleged failure to follow the mandatory reporting rules was not a cause-in-fact of Plaintiffs' alleged damages per the well-pleaded allegations of the petition. For example, Teurlings contends that neither SNG's access to counseling nor SNG's living arrangements were within its control, as these things were exclusively within SG's control. Teurlings further asserts that "it is undisputed that after Teurlings reported the alleged abuse to [SNG's] mother (whom Plaintiff concedes was the custodial parent at the time), [SNG] was never again the victim of abuse at the hands of [AC]." Thus, Teurlings concluded that: "Plaintiff fails to state a cause of action against Teurlings by failing to make well-pleaded factual allegations that demonstrate the alleged breach of duty by Teurlings was a cause in fact and legal cause of Plaintiff's damages."

In its exception of no cause of action, however, Teurlings states: "Plaintiffs have no cause/right of action and/or no entitlement to recover any medical expenses paid by Medicare and/or Medicaid." This assertion is not discussed in the memorandum in support of the exception. In the memorandum, Teurlings argues that it had no legal duty to NG; that the petition makes no allegation that NG was SNG's custodial parent; that NG did not provide his contact information to Teurlings; and that there is no allegation that if Teurlings had reported the abuse to DCFS in 2015, then SNG would have obtained counseling or been provided with different living arrangements.

In its written reasons for ruling, the trial court denied the exception of no cause of action finding that "Teurlings breached its duty as a mandatory reporter of sexual abuse allegations when it failed to report the allegations despite the its being notified

5

of same." The only action Teurlings took at that time was to notify the child's mother."

Plaintiffs argue that the duty to report was owed to all children, all parents, and society at large because Teurlings is a mandatory reporter. Plaintiffs argue that the duty encompasses a duty to protect NG and SNG from just the type of harm they suffered.

Teurlings argues that the petition does not contain any allegation that its counselor had "cause to believe that a child's physical or mental health or welfare is endangered as a result of abuse or neglect." Based on its assertion that no abuse occurred after November of 2015, Teurlings argues that "it would be perfectly consistent with the allegations that by the time the counselor had received notice of the sexual interactions between [SNG] and [AC], the interactions had ended and that [SNG] no longer felt in danger of being abused and that she simply needed to talk to someone about her experience."

Teurlings' attempts to make a distinction between whether SNG's welfare "is" endangered or "was" endangered lacks merit. Even if the sexual abuse had ended, SNG's welfare continued to be endangered as long as she was made to live in the same household as her alleged abuser. Teurlings fails to acknowledge that SNG's mental health could have continued to be at risk even if the sexual abuse had ceased as Teurlings argues it did. The allegation in the petition that SNG made a second disclosure to the counselor in 2017 can be considered, in reviewing this exception of no cause of action, as an allegation that SNG continued to feel that her mental status and welfare were endangered by her mother's failure to get her counseling, by being made to continue to live in the home with AC, and by her father not being informed of the allegations.

6

For these reasons, the trial court did not err in denying the exception of no cause of action.

*Prescription*

> The standard of review of a grant of an exception of prescription is determined by whether evidence was adduced at the hearing of the exception. If evidence was adduced, the standard of review is manifest error; if no evidence was adduced, the judgment is reviewed simply to determine whether the trial court's decision was legally correct. The party pleading the exception of prescription bears the burden of proof unless it is apparent on the face of the pleadings that the claim is prescribed, in which case the plaintiff must prove that it is not.

*Arton v. Tedesco*, 14-1281, p. 3 (La.App. 3 Cir. 4/29/15), 176 So.3d 1125, 1128, *writ denied*, 15-1065 (La. 9/11/15), 176 So.3d 1043 (citations omitted).

In this case, no evidence was introduced at the hearing on the exceptions. Teurlings contends that the trial court "received arguments and evidence in connection with the objections." However, pursuant to La.Code Civ.P. art. 931, no evidence can be introduced in support of or to controvert the exception of no cause of action. Furthermore, the transcript does not indicate that any evidence was admitted[6] and no exhibits were attached to either the exception of prescription or the opposition to the exception.

Teurlings argues that the one-year prescriptive period applicable to actions in tort ought to apply here rather than the three-year prescriptive period applicable to actions against persons for abuse of minors provided in La.Civ.Code art. 3496.1 and La.R.S. 9:2800.9. Plaintiffs do not argue the applicability of a three-year prescriptive period, but rather, that the doctrine of *contra non valentem* applies.

> The doctrine of contra non valentem applies as an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. The

---

[6] As noted above, Plaintiffs' counsel made a statement that he wanted to file his brief and any all the documents attached thereto into evidence. However, there were no attachments to or referenced in Plaintiffs' memorandum in opposition to the exceptions. In the opposition to the writ application, counsel for Plaintiffs again notes that evidence was introduced but does not indicate what the evidence was.

Court has recognized four instances where contra non valentem can apply: . . . (3) where the debtor himself has done some act effectively to prevent the creditor from availing himself of his cause of action; or (4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Specialized Loan Servicing, LLC v. January*, 12-2668, pp. 5-6 (La. 6/28/13), 119 So.3d 582, 585 (first emphasis added).

The trial court found that the suit was timely because NG "did not have any knowledge of the allegations until he was notified by the authorities that the alleged abuse had occurred." The ruling does not differentiate between the claims brought by NG on his own behalf and the claims brought on behalf of SNG. In its memorandum in support of its exception of prescription, Teurlings does not make this distinction either.

At the hearing, however, Teurlings argued that SNG and her domiciliary parent, SG, knew about the facts giving rise to this lawsuit as of the date the report of alleged abuse was made to Teurlings. Although SNG, who was a minor at the time, had no procedural capacity to sue, SG and NG would have had to bring the suit on her behalf unless the custody agreement made another provision. La.Code Civ.P. art. 683(B). While it is unclear whether NG or SG had the right to bring suit on SNG's behalf under the custody agreement, La.Code Civ.P. art. 683(B) recognizes the situation where a person having parental authority may fail or refuse to bring suit on behalf of the minor. Further, "[t]he principles of equity and justice which form the mainstay of the doctrine [of *contra non valentem*], however, demand that under certain circumstances, prescription be suspended because plaintiff was effectually prevented from enforcing his rights for reasons external to his own will." *Wimberly v. Gatch*, 93-2361 (La. 4/11/94), 635 So.2d 206, 211. This is exactly the case for SNG and NG. In *Wimberly*, the plaintiffs were the parents of a minor, Brandon, who

8

was sexually molested by a neighbor, Russell, who was almost eighteen. The parents filed suit individually and on behalf of their son, naming the neighbor and his parents as defendants. The defendants filed an exception of prescription alleging that the last act of alleged molestation occurred between April 10 and 16, 1988; that Russell was arrested on April 27, 1988;[7] and that suit was not filed until April 21, 1989, but later amended on January 4, 1990, to include allegations that the abuse commenced when Brandon was seven (in 1984) and continued at a rate of one to two times a week until Russell was arrested. The trial court sustained the exception of prescription, and the defendants argued that such ruling was correct because "although Brandon may justifiably have felt fear and embarrassment over the alleged incidents, he retained sufficient mental and psychological capacity to inform others of the acts." *Id*. at 212. However, our supreme court reversed the trial court's grant of the exception of prescription after discussing Child Sexual Abuse Accommodation Syndrome (CSAAS), which takes into consideration the behavioral variations of children of sexual abuse. It stated:

> Cognizant of the CSAAS and educated by it, this court refuses to perpetuate the myths it debunks, or reward the molester by allowing him to profit by the normal behavioral reactions of his victim to the sexual abuse. The syndrome explains that due to self-blame, fear of blame, retaliation, *et certa* [sic]*,* the normal child victim of sexual abuse is likely to never disclose, not immediately disclose or partially disclose the extent or frequency of their involvement in the sexual abuse. Understanding that secrecy and that delayed, conflicted and unconvincing disclosure are the norm and that immediate disclosure is atypical, in civil actions, the child victim's delayed or partial disclosure will not be countenanced, in law or equity, to victimize the child a second time.

> Although an unemancipated minor might have a right of action against a tortfeasor to recover for injuries, the unemancipated minor does not have procedural capacity to sue. LSA–C.C.P. art. 683(A); *Bouterie v. Crane, supra; Garrett v. Earnest,* 376 So.2d 623 (La.App. 4th Cir. 1979). Instead, the minor's father (or mother, under certain contingencies) is the proper party plaintiff to sue to enforce the right of

---

[7] Russell confessed to several instances where he sexually abused Brandon.

> the unemancipated minor who is the legitimate issue of living parents, not divorced or judicially separated. LSA–C.C.P. art. 683(C). Thus, under Louisiana's legal framework, only Brandon's father ("parents") had capacity to sue for Russell's sexual abuse of Brandon. Yet, due to no fault of their own, Brandon's parents had no knowledge of any of the molestations by Russell until April 25, 1988.

*Wimberly*, 635 So.2d at 215-16.

Teurlings argues that *Wimberly*, is inapplicable to the case sub judice because it dealt with a claim against the actual perpetrator and that the doctrine of *contra non valentem* should not apply in the same way against Teurlings since it was not an actual abuser. Plaintiffs, on the other hand, argue that the reasoning in *Wimberly* is applicable despite Teurlings' status as a non-abuser because the same policy concerns are operative.

We find that the trial court did not err in applying the doctrine of *contra non valentem* to both SNG's and NG's claims based on SG's failure to notify NG and the proper authorities of SNG's allegations against AC. Accordingly, we find no error in the trial court's rulings.

**WRIT DENIED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

19-307

N. G., ET AL.

VERSUS

A. C., ET AL.

**Cooks, J. Concurs.**

I agree with the majority, but I write to further clarify my position. At the time SNG reported her allegations to Teurlings she was a minor without the procedural capacity to sue.[1] La.Code Civ.P. art. 683(A). Under the provisions of La.Code Civ. P. art. 683(B), either SG or NG, as the parents of SNG, ordinarily enjoy the right to bring suit on behalf of SNG, but it is unclear from the custody agreement whether NG or SG had the right thereunder to bring suit on SNG's behalf.

_____

[1]

    A. **An unemancipated minor has no procedural capacity to sue**.

    B. **All persons having parental authority over an unemancipated minor must join as proper plaintiffs to sue to enforce a right of the minor, unless a joint custody implementation order otherwise applies. Nevertheless, with permission of the court, any person having parental authority may represent the minor whenever the other person having parental authority fails or refuses to do so.**

    C. During tutorship, the tutor is the proper plaintiff to sue to enforce a right of the unemancipated minor.

    D. Notwithstanding the provisions of Paragraph A, B, or C of this Article, an attorney appointed by the court having jurisdiction over an unemancipated minor who is in the legal custody of the Department of Children and Family Services is the proper plaintiff to sue to enforce a right of an unemancipated minor. Upon application of the tutor or a person having parental authority who would otherwise be the proper plaintiff to sue pursuant to Paragraph B or C of this Article, the court shall appoint or substitute as the proper plaintiff the best qualified among the tutor, a person having parental authority, or the appointed attorney.

La.Code Civ.P. art. 683 (emphasis added).

1

Nevertheless, article 683(B) recognizes that a person with parental authority may fail or refuse to act on behalf of a minor and *in such event the other parent may act*. Here, when SNG failed to act NG could have, and apparently would have, acted on behalf of the minor and himself *if he had been informed as the law requires*.

I agree with the majority's finding that Teurlings' attempt to extricate itself from the equitable reach of the doctrine of *contra non valentem* by insisting it should be applied only against the abuser, besides being self-motivated, undermines the purpose and policy considerations for Louisiana courts' reliance on the doctrine. *Wimberly* does not turn upon any consideration of the actual abuser, but instead, very clearly relies on the longstanding application of the judicially created doctrine of *contra non valentem* which *suspends the running of prescription against a party unable to act for reasons external to his own will*. As the supreme court explained in *Wimberly*:

> [P]rescription does not accrue as **it does not run against one who is ignorant of the facts upon which his cause of action is based**, as long as such ignorance is not willful, negligent or unreasonable. *In Re Medical Review Panel of Howard,* 573 So.2d 472 (La.1991); *Young v. Clement,* 367 So.2d 828 (La.1979).

> The doctrine of *contra non valentem* distinguishes between personal disabilities of the plaintiff (which do *not* prevent prescription from running) and an inability to bring suit for some cause foreign to the person of the plaintiff (which suspends its running). *Id.* The equitable doctrine is, in part, but *an application of the long-established principle of law that one should not be able to take advantage of one's own wrongful act. Nathan v. Carter,* 372 So.2d 560 (La.1979).

*Wimberly*, 635 So. 2d at 212 (emphasis added).[2]

Tuerlings seeks to benefit from its own wrongful act, i.e., it's failure to notify the proper authorities and NG when SNG first reported allegations of criminal sexual assault. NG, like the plaintiffs in *Wimberly*, "was effectively prevented from

---

[2] I note that La.Code Civ.P. art. 683 was amended after *Wimberly* was decided and no longer provides a preference for the father of the minor.

2

enforcing his rights for reasons external to his own will. *Bouterie v. Crane, supra; see Plaquemines Parish Com'n Council v. Delta Development Co., Inc., supra; Corsey v. State, through Dept. of Corrections,* 375 So.2d 1319 (La.1979)." *Id.* at 211.