IN RE MEDICAL REVIEW
PANEL PROCEEDINGS FOR
THE CLAIM OF DAVID
PARKER

VERSUS

UNIVERSITY MEDICAL
CENTER - NEW ORLEANS

* NO. 2022-C-0608

* COURT OF APPEAL

* FOURTH CIRCUIT

* STATE OF LOUISIANA

* * * * * * *


APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-01176, DIVISION "C"
Honorable Sidney H. Cates, Judge
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Rachael D. Johnson, Judge
Karen K. Herman)


Ann Marie LeBlanc
Kathryn M. Caraway
Erica Andrews
CARAWAY LEBLANC, LLC
3936 Bienville Street
New Orleans, LA 70119

     COUNSEL FOR RELATOR/DEFENDANT

Ron C. Adams
1804 Van Arpel Drive
Laplace, LA 70068

     COUNSEL FOR RESPONDENT/PLAINTIFF


**WRIT GRANTED; JUDGMENT REVERSED; EXCEPTION OF
PRESCRIPTION MAINTAINED**

                **January 23, 2023**

*RDJ*
*DLD*
*KKH*

Relator/Defendant, University Medical Center Management Corporation, d/b/a University Medical Center-New Orleans ("UMC"), seeks review of the trial court's August 9, 2022 judgment overruling its exception of prescription. The underlying litigation involves a medical malpractice claim by Plaintiff/Respondent, David Parker, wherein he alleged that he was misdiagnosed with gout, which resulted in the amputation of toes on his right and left feet.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff alleged that on November 21, 2019, he went to The Urgent Care in LaPlace, Louisiana, complaining of constant numbness and tingling in his right toes since November 19, 2019. Plaintiff alleged that he was treated by Sheryl Gore, Family Nurse Practitioner ("FNP"), and diagnosed with metatarsalgia[1] of the right foot, pain in the right foot, type II diabetes mellitus with other specified complication, and type II diabetes mellitus with diabetic neuropathy. Plaintiff was given a steroid shot, prescribed medication, and sent home.

Plaintiff further alleged that on November 23, 2019, he noticed that his right foot and leg were swelling more than before and sought treatment at UMC, where

---

[1] Metatarsalgia is a condition in which the ball of the foot becomes painful and inflamed.

1

he was treated for leg swelling and diagnosed with gout flare. Plaintiff was prescribed medication and sent home. The medications prescribed plaintiff provided no relief, and he continued to experience pain and leg swelling.

Thereafter, plaintiff alleged that he sought treatment at St. James Primary Care in LaPlace, at which time he was seen by a nurse practitioner who confirmed the gout diagnosis by UMC, but opined that plaintiff was prescribed the wrong medications. The nurse practitioner prescribed different medication and sent plaintiff home. On December 14, 2019, plaintiff sought treatment at Ochsner Medical Center in Kenner, Louisiana, after continuing to experience pain and swelling. Plaintiff alleged that at Ochsner, he was informed that he did not have gout, but rather, he was not getting any circulation to his toes, and would have to undergo surgery to remove five toes on his right foot and one toe on his left foot.

By correspondence dated May 28, 2020, plaintiff submitted a claim under the Medical Malpractice Act with the Division of Administration, naming Sheryl Gore, FNP, as a defendant and requesting a review panel for any doctors or nurses who treated him at UMC on November 13, 2019[2], or November 23, 2019, alleging the failure to correctly diagnose and treat him resulted in his having to undergo surgery to remove toes on his right and left feet. This request for review was received by the Division of Administration on June 8, 2020. The Patient's Compensation Fund ("PCF") issued correspondence to counsel for plaintiff dated June 22, 2020, acknowledging receipt of the medical review panel request and indicating that verification was being obtained on Sheryl Gore.

---

[2]The request for review includes the dates of November 13, 2019 and November 23, 2019 as dates on which plaintiff sought treatment at UMC. The date of November 13, 2019 in the request for review appears to be a typographical error. The record otherwise shows that plaintiff first sought treatment at UMC on November 23, 2019.

On January 14, 2021, the PCF issued correspondence to counsel for plaintiff, indicating that the PCF obtained verification on Sheryl Gore as a qualified healthcare provider, and that plaintiff needed to submit a $100.00 filing fee within forty-five (45) days. On February 18, 2021, the PCF issued correspondence to counsel for plaintiff confirming receipt of the $100.00 filing fee applied to Sheryl Gore.

On April 29, 2021, counsel for plaintiff issued correspondence to the Commissioner of Administration with the subject heading: "Amended Request for Medical Review Panel". Counsel for plaintiff indicated that he wished to amend his original request to include Urgent Care of LaPlace, UMC, St. James Primary Care, and its nurse practitioner who treated plaintiff on or around November 26, 2019. On August 29, 2021, Hurricane Ida made landfall on Louisiana. Counsel for plaintiff allegedly emailed the PCF to notify the office that counsel's home was severely damaged and without power for nearly a month.[3]

On September 23, 2021, the PCF issued correspondence to counsel for plaintiff indicating that UMC was a qualified healthcare provider and requested a $100.00 filing fee to be paid within forty-five (45) days. The PCF advised that failure to comply with the filing fee requirement "shall render the request invalid and without effect". The PCF further advised that it was pursuing verifications for Westbank Urgent Care, LLC, and St. James Primary Care, APMC. On September 28, 2021, the PCF issued correspondence to counsel for plaintiff indicating that St. James Primary Care and Dr. Doughlas Mehaffie, MD, LLC d/b/a Westbank Urgent

---

[3] In support of this assertion, plaintiff references Exhibit D to the opposition, which appears to have been omitted from the writ application, along with Exhibits B, B1, B2, F, F2, and G. Exhibits A, C, E, F1, and F3 are included in duplicate in the writ application. Thus, it appears that every other exhibit has been inadvertently omitted.

Care, LLC/The Urgent Care ("Dr. Mehaffie") were qualified, and requested $200.00 in filing fees to be paid within forty-five (45) days. Again, the PCF advised that failure to comply with the filing fee requirement would render the request invalid and without effect.

On October 5, 2021, the aforementioned correspondence from the PCF dated September 23, 2021 was delivered to an individual at the address of plaintiff's counsel according to a printout from the United States Postal Service ("USPS") tracking service. There was no signature on the return receipt for this mailing. Counsel for plaintiff alleged that due to the effects of Hurricane Ida, no mail was delivered for weeks after August 26, 2021 in the LaPlace area. However, on November 2, 2021, counsel for plaintiff emailed the PCF, asking how to pay the filing fee and was advised that same day by email that the funds could be wired, mailed or hand delivered.

The due date for the filing fee for UMC was November 19, 2021, forty-five days after October 5, 2021 (the date the USPS tracking service indicated that the letter dated September 23, 2021 was delivered to the office of counsel for plaintiff). The date that counsel for plaintiff actually paid the filing fee was ten days later, on November 29, 2021, via wire transfer.

On December 3, 2021, the PCF issued correspondence to counsel for plaintiff indicating that because the filing fees for UMC, St. James Primary Care, and Dr. Mehaffie were not paid timely, the claims against all three were deemed invalid and without effect.

On January 5, 2022, counsel for plaintiff submitted the same complaint as the April 29, 2021 amended complaint to the Commissioner of Administration, captioning the claim as a "Second Amended Request for Medical Review Panel."

4

On January 24, 2022, the PCF issued correspondence to counsel for plaintiff, which acknowledged the January 5, 2022 complaint and indicated that UMC, St. James Primary Care, and Dr. Mehaffie were qualified healthcare providers. The PCF also acknowledged the receipt of $400.00 in filing fees, $300.00 of which was applied to the three defendants, and $100.00 was issued as a refund.

On February 22, 2022, UMC filed an exception of prescription, contending that plaintiff's April 29, 2021 complaint was invalid, and the January 5, 2022 complaint was prescribed. Following a hearing, the trial court, on August 9, 2022, rendered judgment with incorporated reasons overruling the exception.

In its written reasons for judgment, the trial court noted that plaintiff "relies on La. R.S. 40:1231.8(A)(2)(a), which states that the filing of the request for a review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors." The trial court also noted that it was "undisputed that the filing fee was timely paid as to Nurse Practitioner Gore." Although the trial court agreed that "the filing fees were not timely paid as to the subsequent defendants," the trial court found that "the joint and solidary obligor provisions [of the MMA] interrupted prescription."

In overruling UMC's exception of prescription, the trial court also "note[d] that Plaintiff was in communication with the [PCF] in an effort to timely pay the filing fees for the subsequent defendants, but written communication between Plaintiff and the [PCF] was delayed and impeded due to the impact of Covid-19 and Hurricane Ida in the Laplace area, resulting in the payment being 10 days late." The trial court found that plaintiff made "a good faith attempt to pay the filing fees within the statutory requirements," and "although Plaintiff paid the

5

filing fees beyond the 45-day requirement," the fees "were paid within the prescriptive and peremptive periods."

UMC timely filed this writ application.

## ASSIGNMENTS OF ERROR

UMC asserts the following assignments of error:

1) The trial court erred in finding that an invalid medical malpractice claim for which no timely filing fee was paid can be resurrected by a late payment due to the suspension of prescription provision found in La. R.S. 40:1231.8 when the applicable provision and case law require the opposite conclusion.

2) The trial court erred in providing plaintiff's counsel an excuse for late payment of the filing fee as to UMC due to Hurricane Ida's impact when no statute or Executive Order provided for suspension, and plaintiff failed to offer evidence of an actual delay.

## STANDARD OF REVIEW

In *Wells Fargo Fin. Louisiana, Inc. v. Galloway*, 2017-0413, pp. 7-9 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 799–800, this Court recognized that when evidence is introduced at the hearing on an exception of prescription, the trial court's ruling is reviewed under a manifest error standard, unless the case involves no dispute regarding material facts, only the determination of a legal issue, in which case the ruling is reviewed *de novo*:

> A peremptory exception generally raises a purely legal question. *See Metairie III v. Poche' Const., Inc*., [20]10-0353, p. 3 (La. App. 4 Cir. 9/29/10), 49 So.3d 446, 449. Nonetheless, evidence may be introduced in the trial court to support or controvert a peremptory exception of prescription. See La. C.C.P. art. 931 (providing that "evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition").

6

The standard of review of a trial court's ruling on a peremptory exception of prescription turns on whether evidence is introduced. *State v. Thompson*, [20]16-0409, p. 18 (La. App. 4 Cir. 11/23/16), 204 So.3d 1019, 1031 (citing *Miralda v. Gonzalez*, 14-0888, pp. 17-18 (La. App. 4 Cir. 2/4/15), 160 So.3d 998, 1009).

When no evidence is introduced, "the judgment is reviewed simply to determine whether the trial court's decision was legally correct." *Arton v. Tedesco*, [20]14-1281, p. 3 (La. App. 3 Cir. 4/29/15), 176 So.3d 1125, 1128. A de novo standard of review applies. In this context, "the exception of prescription must be decided on the facts alleged in the petition, which are accepted as true." *Denoux v. Vessel Mgmt. Servs., Inc.*, [20]07-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88; *Ohle v. Uhalt*, 16-0569, p. 13 (La. App. 4 Cir. 2/1/17), 213 So.3d 1, 10.

When evidence is introduced, the trial court's factual findings on the issue of prescription generally are reviewed under the manifestly erroneous-clearly wrong standard of review. *Miralda*, [20]14–0888 at p. 17, 160 So.3d at 1009 (collecting cases). When evidence is introduced but the case involves no dispute regarding material facts, only the determination of a legal issue, an appellate court must review the issue de novo, giving no deference to the trial court's legal determination. *See Cawley v. National Fire & Marine Ins. Co.*, [20]10-2095, p. 3 (La. App. 1 Cir. 5/6/11), 65 So.3d 235, 237. Likewise, "[w]hen the defense of prescription is raised by way of summary judgment, we review the resulting judgment *de novo*, 'using the same criteria used by the trial court in determining whether summary judgment is appropriate.'" *M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't*, [20]15–0860, p. 11 (La. App. 4 Cir. 12/2/15), 182 So.3d 312, 320 (quoting *Hogg v. Chevron USA, Inc.*, [20]09–2632, 09-2635, p. 6 (La. 7/6/10), 45 So.3d 991, 997).

This Court has also recognized that "when a matter involves the interpretation of a statute, it is a question of law, and a *de novo* standard of review is applied." *New Orleans Fire Fighters Pension & Relief Fund v. City of New Orleans*, 2017-0320, p. 5 (La. App. 4 Cir. 3/21/18), 242 So.3d 682, 688 (citing *Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't. of Econ. Dev.*, 2010-0193, p. 9 (La. 1/19/11), 56 So.3d 181, 187).

**DISCUSSION**

UMC first argues that no timely filing fee was paid as to UMC, and thus, the medical malpractice claim cannot be resurrected by a late payment under La. R.S. 40:1231.8. UMC notes that La. R.S. 9:5628(A) provides that a medical malpractice action must be filed "within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect," and that La. R.S. 40:1231.8(A)(2)(a) provides that the filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors:

> The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. *The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.* Filing a request for review of a malpractice claim as required by this Section with any agency or entity other than the division of administration shall not suspend or interrupt the running of prescription. All requests for review of a malpractice claim identifying additional health care providers shall also be filed with the division of administration. [emphasis added]

UMC concedes that La. R.S. 40:1231.8(A)(2)(a) provides that the filing of a request for a review of a medical malpractice claim shall suspend the time within which suit must be instituted, but argues that a key exception is provided in La. R.S. 1231.8(A)(3)(a), which states:

8

(3) It shall be the duty of the board within fifteen days of the receipt of the claim by the board to:

(a) Confirm to the claimant by certified mail, return receipt requested, that the filing has been officially received and whether or not the named defendant or defendants have qualified under this Part.

UMC also cites La. R.S. 40:1231.8(A)(1)(c), which provides that "[a] claimant shall have forty-five days from the date of receipt by the claimant of the confirmation of receipt of the request for review in accordance with Subparagraph (3)(a) of this Subsection to pay to the board a filing fee in the amount of one hundred dollars per named defendant qualified under this Part."

Finally, UMC notes that La. R.S. 40:1231.8(A)(1)(e) provides:

*Failure to comply with the provisions of Subparagraph (c)* or (d) of this Paragraph within the specified forty-five day time frame in Subparagraph (c) of this Paragraph *shall render the request for review of a malpractice claim invalid and without effect. Such an invalid request* for review of a malpractice claim *shall not suspend time* within which suit must be instituted in Subparagraph (2)(a) of this Subsection. [emphasis added]

UMC argues that in the case of multiple defendants, the failure to timely pay a filing fee invalidates the request to review a medical malpractice claim against the specific qualified healthcare provider for whom no fee was timely made and will not suspend prescription, citing *Kirt v. Metzinger*, 2019-1162, pp. 11-12 (La. 4/3/20), 341 So.3d 1211, 1218. UMC also relies on *In re Medical Review Panel for Crane*, 2020-259, p. 6 (La. App. 5 Cir. 4/22/21), 347 So.3d 979, 984, *writ denied sub nom. In re Med. Rev. Panel for Crane*, 2021-00707 (La. 9/27/21), 324 So.3d 95, wherein the Fifth Circuit found "[b]oth the filing of the request for review and the payment of the filing fee required by La. R.S. 40:1231.8(A)(1)(c) are 'inexorably joined'; hence, the request for review is not considered to be filed until the claimant pays the filing fee."

9

UMC argues that plaintiff did not file an amended claim against UMC for which a timely fee was paid until January 5, 2022; yet, the last possible date on which the one-year prescriptive period of La. R.S. 9:5628 could have started was December 14, 2019 (the date plaintiff allegedly received the diagnosis that he did not have gout). Thus, UMC submits, the January 5, 2022 request is prescribed on its face, shifting the burden to plaintiff to demonstrate that the claim is not prescribed. UMC further argues that simply because plaintiff had already named another provider for which he had paid a timely filing fee did not thereby suspend prescription as to UMC.

In *Kirt*, *supra*, a medical malpractice claimant initially filed a request for medical review panel with the Division of Administration against three defendants. These original three named defendants were later dismissed on summary judgment. More than one year after the alleged malpractice, but prior to the original three defendants being dismissed on summary judgment, three additional healthcare providers were named as defendants: Pauline Taquino, Parish Anesthesia and Gayle Martin. Of these three later named defendants, filing fees were timely paid to the PCF for Taquino and Parish Anesthesia but the filing fee for Martin was not timely paid. Taquino, Parish Anesthesia and Martin filed exceptions of prescription. The trial court found that the claims against all three had prescribed and dismissed the claims against them with prejudice. This Court affirmed the trial court judgment, finding that the failure to pay the full filing fee within the forty-five day period rendered the entire request for review invalid. *Kirt v. Metzinger*, 2019-0180 (La. App. 4 Cir. 6/19/19), 274 So.3d 1271. The Louisiana Supreme Court affirmed in part and reversed in part, finding that only the claim against Martin was prescribed. As to the prescription issues as to the claims against the

10

remaining defendants, Taquino and Parish Anesthesia, the Court noted that the Kirts maintained that they could not have reasonably known about the claims against those two defendants until Taquino was deposed and disclosed treatment information that was not reasonably ascertainable from the medical records. Accordingly, the Supreme Court pretermitted consideration of those arguments and remanded the case to the trial court for further disposition of the exceptions of prescription filed on behalf of defendants Taquino and Parish Anesthesia. *Kirt,* 2019-1162, p. 14, 341 So.3d at 1219.

In *Crane*, a medical malpractice claimant filed a request for a medical review panel on July 6, 2018 with the Division of Administration alleging malpractice by four healthcare providers. The PCF notified claimant on July 17, 2018 that she had forty-five days to remit filing fees in accordance with La. R.S. 40:1231.8(A)(1)(c) and that failure to do so would render her request for review invalid and without effect. On August 13, 2018, the claimant was notified by the Division of Administration that one of the four providers she named, Dr. Day, was not a qualified provider. On September 23, 2018, the PCF notified claimant that it had not received the filing fees due and therefore her request for review was considered invalid and without effect.

On October 17, 2018, claimant filed another request for review naming the providers in her original request with the exception of Dr. Day. One of the providers named in the October 17, 2018 request, Dr. Krivitsky, filed an exception of prescription, arguing that the claimant's original request for review was invalid and without effect for failure to pay the required fees and the second request was prescribed on its face because it was filed more than two years after the alleged malpractice and more than one year from the date claimant allegedly discovered

11

the malpractice. The trial court sustained the exception of prescription and dismissed all claims against Dr. Krivitsky with prejudice.

On appeal, the Fifth Circuit affirmed, stating that "[b]oth the filing of the request for review and the payment of the filing fee required by La. R.S. 40:1231.8(A)(1)(c) are 'inexorably joined'; hence, the request for review is not considered to be filed until the claimant pays the filing fee." *Crane*, 2020-259, p. 6, 347 So.3d at 984, (quoting *Med. Review Complaint by Downing*, 2018-1027 (La. App. 4 Cir. 5/8/19), 272 So.3d 55, *writs denied*, 19-00939, 19-00929 (La. 9/24/19), 278 So.3d 979, and *writs denied*, 19-00943, 19-00938 (La. 9/24/19), 279 So.3d 936; *In re Herring*, 07-1087 (La. App. 3 Cir. 1/30/08), 974 So.2d 924, 926). Additionally, the court noted that "failure to pay the filing fees within the allotted time period shall render the request for review of a malpractice claim invalid and without effect, and such an invalid request shall not suspend the time within which suit must be instituted." *Crane*, 2020-259, pp. 6-7, 347 So.3d at 984-985.

The claimant in *Crane* argued that prescription was suspended against Dr. Krivitsky by the filing of the first request for review on July 6, 2018. The claimant contended that reading La. R.S. 40:1231.8(A)(2)(a) as written, her second request for review was timely because she was allowed ninety days from when she was notified that Dr. Day was not a qualified provider to bring an action against any joint and solidary obligors and/or joint tortfeasors, including Dr. Krivitsky. *Crane*, 2020-259, p. 7, 347 So. 3d at 985.

The *Crane* court disagreed, finding that "[b]ecause the original request for review was invalid and without effect as to Dr. Krivitsky, in accordance with La. R.S. 40:1231.8(A)(1)(e), prescription was not suspended with respect to Dr. Krivitsky pursuant to La. R.S. 40:1231.8(A)(2)(a)." *Crane*, 2020-259, p. 8, 347

12

So.3d at 985. (footnote omitted).  The *Crane* Court relied on *Kirt, supra*, noting that while the Louisiana Supreme Court was not presented with the same arguments made by the claimant in *Crane*, its findings were instructive, stating:

> Thus, in our view, by [the *Kirt* Court's] finding that the claims against Ms. Martin were prescribed without waiting on the resolution of the prescription issues as to the claims against Ms. Taquino and Parish Anesthesia, the *Supreme Court, by implication, established the principle that once a request for review as to a defendant is deemed invalid and without effect due to the plaintiff's failure to timely pay the filing fee as to that defendant, claims against that defendant cannot not [sic] be revived by relying upon the "joint and solidary obligor" provision of La. R.S. 40:1231.8(A)(2)(a).* If a claim could be revived by way of this statute, the Supreme Court surely would have waited to resolve the prescription dispute as to Ms. Martin until after the prescription issues as to Ms. Taquino and Parish Anesthesia were resolved—*since, if the claims against Ms. Taquino and Parish Anesthesia were ultimately found to be timely and not prescribed, then, by way of La. R.S. 40:1231.8(A)(2)(a), prescription arguably could be suspended as to any joint and solidary obligors, possibly including Ms. Martin.*
>
> Applying this principle to the present case, we find that Ms. Crane's failure to pay the $100.00 filing fee as to Dr. Krivitsky rendered the request for review against Dr. Krivitsky invalid and without effect resulting in her claims against Dr. Krivitsky prescribing. *In accordance with Kirt, we find that the claims against Dr. Krivitsky could not subsequently be revived by relying on the claim filed against Dr. Day or anyone else pursuant to La. R.S. 40:1231.8(A)(2)(a).*

*Crane*, 2020-259, pp. 10-11, 347 So.3d at 987. (emphasis added).

UMC also relies on the case of *Children's Hospital v. Schnauder*, 2019-0363 (La. App. 1 Cir. 12/21/20), 316 So.3d 1115, in support of its position.  In *Children's Hospital*, a claimant in a medical malpractice case filed a request for a medical review panel against eight named defendants.  Seven of the eight defendants were confirmed at different times as qualified providers, and each time, the PCF notified claimant that a filing fee of $100.00 per qualified defendant was due within forty-five days of notice as per La. R.S. 40:1231.8(A)(1)(c), and that

failure to make payment within the forty-five day time frame would render the request for review invalid, without effect and would not suspend the time to file suit. Timely payment of filing fees was made for five of the defendants. But after receiving notice that an additional $200.00 was due for the remaining qualified defendants (Matthews and Waguespack), the claimant submitted only a $100.00 filing fee. The PCF acknowledged receipt of that fee and advised claimant of a remaining balance of $100.00. The remaining $100.00 filing fee was not timely paid and claimant was advised that the case was invalid and without effect as to Matthews or Waguespack and that claimant should advise the PCF as to which claim against the two remaining defendants was to be invalidated.

All seven defendants confirmed as qualified providers subsequently filed a petition for writ of mandamus, naming as defendants claimant and the PCF Executive Director, arguing that because the claimant failed to pay the full $700.00 in filing fees within the statutory time frame, the PCF had a ministerial duty to notify claimant and all named defendants that the request for review was rendered invalid and without effect. The seven defendants sought judgment mandating that the PCF perform the above ministerial duty alleged and also asked for judgment ordering the return of all filing fees paid by defendants. The trial court granted the petition for writ of mandamus.

The First Circuit reversed the judgment of the trial court, citing *Kirt, supra*, and agreeing with claimant's argument that the trial court erroneously interpreted La. R.S. 40:1231.8(A)(1)(c), (e), and (g), in finding that the failure to pay the full filing fees as to defendants Matthews and Waguespack rendered the request for review invalid and without effect as to all defendants. *Children's Hospital*, 2019-0363, p. 9, 316 So.3d at 1122-23. In reversing the trial court judgment, the Court

recognized that the facts in *Kirt* were not precisely on point with the facts

presented in *Children's Hospital*, that is, that the claimants in *Kirt* failed to pay the

filing fee for a defendant added in an amendment to the initial request for review,

which is addressed in La. R.S. 40:1231.8(A)(1)(g), whereas, in *Children's*

*Hospital*, the claimant failed to pay full filing fees after two of the defendants

originally named in her request for review were confirmed as qualified under the

Act, which is addressed in La. R.S. 40:1231.8(A)(1)(c).  However, the First Circuit

found this to be "a distinction without a difference, both factually and legally."

*Children's Hospital*, 2019-0363, p. 9, 316 So.3d at 1122.  The Court noted that

"[t]he ruling in *Kirt* explicitly considered and encompassed the plain language of

LSA-R.S. 40:1231.8(A)(1)(c), (e), and (g) collectively", and "[m]oreover, the *Kirt*

Court specifically contemplated the scenario presented in this matter, noting that

the PCF may send more than one confirmation letter, *'either because the PCF*

*confirmed the qualified status of the originally named defendants on different*

*dates, or because the PCF confirmed the status of a defendant added to an existing*

*proceeding,'* and concluding that '[e]ach such letter triggers an obligation to pay a

filing fee that is subject to its own forty-five day payment period for a particular

defendant." *Children's Hospital*, 2019-0363, p. 9, 316 So.3d at 1122 (quoting

*Kirt, supra*)(emphasis in original).

Applying *Kirt*, the First Circuit held that the trial court erred in finding that

pursuant to La. R.S. 40:1231.8(A)(1)(c), (e), and (g), the claimant's failure to pay

the full filing fees resulted in the invalidation of her request for review as to all

defendants:

> It is undisputed that Ms. Robinson timely paid the filing fees as
> to defendants Children's Hospital, Hebert, Johnson, Benoit, and
> Mangus. With respect to these defendants, Ms. Robinson's request for

> review was not rendered invalid and without effect by her failure to pay the full filing fees. It is also undisputed that, although Ms. Robinson paid a filing fee in the amount of $100 towards the $200 required as to defendants Matthews and Waguespack, this did not constitute compliance with LSA-R.S. 40:1231.8(A)(1)(c) as to either defendant in the absence of instruction as to how to apply the funds. *See Kirt*, at ———, fn. 8, 2020 WL 1671571, at \*\*12-13, fn. 8, [2019-1162, p. 13, 341 So.3d at 1219] and *In re Rideaux*, 2012-1096 (La. App. 3 Cir. 3/6/13), 2013 WL 811628. *Therefore, the failure to pay the full filing fees in the amount of $200 as to defendants Matthews and Waguespack rendered the request to review the claims against these defendants, and only these defendants, invalid and without effect.*

*Children's Hospital*, 2019-0363, pp. 9-10, 316 So.3d at 1123 (emphasis added).[4]

In this case, the plaintiff argued in opposing UMC's exception of prescription that *Kirt* is distinguishable from this case because the plaintiff in *Kirt* conceded that she never paid the filing fee as to defendant Martin prior to instituting the lawsuit against Martin. Plaintiff argues that *Crane* is distinguishable because the plaintiff in that case did not timely pay the filing fee for any of the defendants, and therefore, no named defendant interrupted prescription by filing a valid claim for the medical review panel. Similar to the First Circuit's finding when comparing the facts in *Kirt* to the facts in *Children's Hospital*, we likewise find the particular factual distinctions between this case and those in *Kirt* and *Crane* cited by plaintiff to be distinctions without a difference as to the issue of the requirement for the timely payment of filing fees under La. R.S. 40:1231.8, and the consequences for failure to do so.

---

[4] The First Circuit also held that the trial court erred in granting judgment directing the PCF to notify Ms. Robinson and all named defendants that Ms. Robinson's request for a medical review panel was invalid and without effect due to her failure to timely pay the required filing fee per defendant, and to remit to Ms. Robinson the $600.00 in filing fees that were paid. *Id*. at p. 10, 316 So.3d at 1123.

Pursuant to *Kirt,* plaintiff's failure to timely pay the filing fee as to UMC rendered that initial request invalid and without effect as to UMC only:

> In this multi-defendant proceeding, the claimants failed to pay a fee for the claim against one defendant. *Under these circumstances, when Subparagraph (e) declares "the request for review of a malpractice claim" invalid and without effect, the question is which request for review and, more specifically, which malpractice claim?* The language of Subparagraphs (c) and (e) reveals the answer: *the claim against the specific qualified healthcare provider for whom no filing fee was paid.*

*Kirt*, 2019-1162, p. 10, 341 So.3d at 1217 (emphasis added).

"The claimant either timely pays the filing fee and preserves the claim against that defendant; or the claimant fails to timely pay the filing fee, rendering the request for review of a malpractice claim against that defendant invalid and without effect." *Id*. at p. 11, 341 So.3d at 1218. In this case, plaintiff alleged the date that the medical malpractice was discovered was on December 14, 2019. The fact that plaintiff failed to timely pay the filing fee for UMC in its original claim against that defendant is not in dispute.

In reasons for judgment, the trial court found:

> The Court agrees that although the filing fees were not timely paid as to the subsequent defendants, the joint and solidary obligor provisions interrupted prescription when the claim was filed, and filing fee timely paid as to Nurse Practitioner Gore.

We disagree with this finding by the trial court. We agree with the holding in *Crane* that "[b]oth the filing of the request for review and the payment of the filing fee required by La. R.S. 40:1231.8(A)(1)(c) are 'inexorably joined'; hence, the request for review is not considered to be filed until the claimant pays the filing fee." *Crane,* 2020-259, p. 6, 347 So.3d at 984. Plaintiff failed to pay a timely filing fee to the PCF for its original claim against UMC of April 29, 2021,

17

rendering the claim invalid and without effect. The January 5, 2022 amended claim against UMC (for which a timely fee was paid) is prescribed on its face and cannot be "revived" by relying on the claim made against defendant Gore (for whom a timely fee was paid) to interrupt prescription under La. R.S. 40:1231.8(A)(2)(a).

Plaintiff also argues that the trial court erred in finding that circumstances relating to the impact of Hurricane Ida and/or Covid-19 excused plaintiff's late payment of the filing fee for UMC. In reasons for judgment, the trial court stated:

> The Court also notes that Plaintiff was in communication with the Patient Compensation Fund in an effort to timely pay the filing fees for the subsequent defendants, but written communication between Plaintiff and the Patient Compensation Fund was delayed and impeded due to the impact of Covid-19 and Hurricane Ida in the Laplace area, resulting in the payment being 10 days late.
> After considering the pleadings, memoranda, argument of counsel, the law, and given the circumstances surrounding the impact of Hurricane Ida in the Laplace area where Plaintiff and his attorney reside, and given Plaintiff's good faith attempt to pay the filing fees within the statutory requirements, the Court finds that although Plaintiff paid the filing fees beyond the 45-day requirement, said fees, however, were paid within the prescriptive and peremptive periods.

As a result of Hurricane Ida, which made landfall in Louisiana on August 29, 2021, the Governor of Louisiana issued Proclamation No. 170 JBE 2021, suspending legal deadlines only to September 24, 2021. Statutes enacted due to Covid-19 only suspended deadlines between March 17, 2020 and July 5, 2020. La. R.S. 9:5829, 9:5830.

Plaintiff's initial claim against UMC was filed on April 29, 2021. A notice dated September 23, 2021 was sent to counsel for plaintiff by the PCF stating the UMC was a qualified healthcare provider and a filing fee of $100.00 was requested to be paid within forty-five (45) days. The USPS tracking service indicates that this letter was delivered to an individual at the address of counsel for plaintiff on

October 5, 2021.  Thus, the due date for the filing fee for UMC was November 19, 2021.

Counsel for plaintiff alleges that no mail was delivered to his office for weeks after Hurricane Ida.  However, the record shows that on November 2, 2021, counsel for plaintiff sent an email to the PCF, asking how to pay the remaining filing fees.  He was advised by email sent that same day that the fees could be hand delivered, mailed or sent by wire transfer.  Counsel for plaintiff paid the filing fee for UMC by wire transfer on November 29, 2021, ten days after the due date.

Because we find no legal basis for excusing plaintiff's payment of the filing fee for UMC ten days past the deadline due to Hurricane Ida and/or Covid-19 or any other reason, we find the trial court erred in finding that plaintiff's payment of the filing fee for UMC on November 29, 2021 was timely.

For the reasons stated above, we conclude that plaintiff's claim against UMC is prescribed, and the trial court erred in overruling UMC's exception of prescription.  The writ application is granted, the trial court judgment overruling UMC's exception of prescription is reversed, and the exception of prescription is maintained.  Plaintiff's claims against UMC are hereby dismissed with prejudice.

**WRIT GRANTED; JUDGMENT REVERSED; EXCEPTION OF PRESCRIPTION MAINTAINED**